UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS


| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| JONATHAN J. KUCHARZ, ) | |
| ) | Chapter 13 |
| ) | Case No. 09-81258 |
| DEBTOR(S). ) | |


**DEBTOR'S BRIEF**


The Debtor, by his attorney, W. Edgar Weer, submits the following brief in support of the proposition that unemployment compensation is a benefit of the Social Security Act, and is excluded from the calculation of current monthly income.

**A.  INTRODUCTION**

The Debtor filed his chapter 13 plan on April 22, 2009.  The Debtor lost his job shortly before he filed his case.  The Debtor reported on his Form 22C that he received unemployment compensation.  The Debtor excluded the amount of unemployment compensation he receives from the calculation of his current monthly income ("CMI").

The U.S. Trustee objected to confirmation of the Debtor's plan based upon the Trustee's assertion that the Debtor was not contributing all of his disposable income to his plan, as required by Section 1325 of BAPCPA.  The Trustee asserts that unemployment compensation is not a benefit received pursuant to the Social Security Act, and is included when calculating CMI.

**B.  STATEMENT OF THE ISSUE**

The issue before the Court is whether unemployment compensation is excluded from calculation of CMI because it is a benefit received under the provisions of the Social Security Act.

1

## C. DISCUSSION, INCLUDING RELEVANT STATURORY AND CASE LAW AUTHORITY

**1.    Social Security Benefits Are Excluded From Calculation of CMI.**

Current monthly income is defined at Sec. 101(10A) of BAPCPA, in part, as follows:

The term "current monthly income" - . . . (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), or a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act . . . .

**2.    Unemployment Compensation Is A Benefit Paid Pursuant To The Provisions Of The Social Security Act.**

BAPCPA does not just exclude Social Security payments, but any benefits paid under the Social Security Act. Such benefits include Supplemental Security Income (SSI) for the elderly and disabled, unemployment compensation, public assistance under the Temporary Assistance for Needy Families (TANF) program, and funds received through programs administered under block grants made to the states to provide social services. Provisions of the Social Security Act that apply to unemployment compensation are found at Subchapters III, XII, XIII, and XV, 42 U.S.C. Sections 501 – 505, 1321 – 1324.

The Advisory Committee on Bankruptcy Rules could not agree whether unemployment compensation is a "benefit received under the Social Security Act, " and consequently the new form Statement of Current Monthly Income and Means Test Calculation takes no position on whether it should be excluded from CMI. Instead, the form provides an alternative in which the debtor can list unemployment compensation as

countable income or list it separately and not countable if the debtor "contends" it is a benefit under the Social Security Act. *See*, Advisory Committee Note to Form 22A, Appx. D.3.

The United States Congress enacted the Social Security Act on August 14, 1935. The Act is codified at 42 U.S.C. Sec. 301, et seq. The Social Security Act also established a federal program designed to assist states in administering their programs. 42 U.S.C. Sec. 501 et seq. The states whose unemployment compensation programs satisfy certain requirements qualify for federal funds to administer their programs. The federal statutes relating to funding are set out in the Social Security Act and the Federal Unemployment Tax Act, 26 U.S.C. Sec. 3301 et seq. (the "FUTA"). Under FUTA, a combination of federal and state taxes is levied upon employers. Although they are imposed as "taxes", the amounts paid, are in reality akin to "premiums" that are paid for unemployment insurance coverage. Proceeds from the taxes are deposited in the U.S. Treasury's Federal Unemployment Trust Fund (the "Fund") and each state has a separate account in the Fund.

The Secretary of the Treasury is authorized and directed to receive and hold in the Fund all monies deposited therein by a State agency from a State unemployment fund . . ." 42 U.S.C. Sec. 1104. The Secretary of the Treasury is authorized and directed to pay out of the Fund to any state agency such amount as it may duly requisition. . . " 42 U.S.C. Sec. 1104(f)."

The complex and unique provisions of the Social Security Act and the respective state agencies with which it cooperates work in concert to accomplish the goals set forth in the Act. Benefits derived under the Illinois Compensation Act (820 ILCS 405/100 et seq.) are derived under the Social Security Act in that the enactment of the federal act made the Illinois law possible and feasible. In addition, because the Fund is contributed to by the states and distributed by the Federal Government to the states, it is hard to argue that unemployment benefits are not benefits derived under the Social Security Act. The federal government regulates and funds all state unemployment programs and to deny the dependence of the Illinois Act or other unemployment legislation upon the federal statues

is implausible. When deciding the constitutionality of the Alabama Unemployment Act,[1] the U.S. Supreme Court found the following:

> The United States and the State of Alabama are not alien governments. They coexist within the same territory. Unemployment within it is their common concern. Together the two statutes now before us embody a cooperative legislative effort by state and national governments, for carrying out a public purpose common to both, which neither could fully achieve without the cooperation of the other. The Constitution does not prohibit such cooperation." *Carmichael, et al v. Southern Coal & Coke Co.*, 301 U.S. 495, 57 S.Ct. 868 (1937).

**3.     The U.S. Supreme Court has ruled that unemployment compensation, which is provided by the provisions of the Social Security Act, should be a contractual right, and is "not dependent on any means test."**

In its decision of 1971, in *California Dep't of Human Resources Development v. Java*, 402 U.S. 121, the Supreme Court held: first, that unemployment compensation is meant to assist the temporarily unemployed under provisions of the Social Security Act; and secondly, held that unemployment compensation should be a contractual right, not dependent on a means test, as follows:

> The Social Security Act received its impetus from the Report of the Committee on Economic Security, which was established by executive order of President Franklin D. Roosevelt to study the whole problem of financial insecurity due to unemployment, old age, disability, and health. In its report, transmitted to Congress by the President on January 17, 1935, the Committee recommended a program of unemployment insurance compensation as a "first line of defense for . . . [a worker] ordinarily steadily employed . . . for a limited period during which there is expectation that he will soon be reemployed. This should be a contractual right not dependent on any means test. . . . It will carry workers over most, if not all, periods of unemployment in normal times without resort to any other form of assistance. . . .
>
> The purpose of the [Social Security] Act was to give prompt if only partial replacement of wages to the unemployed, to enable workers "to tide themselves over until they get back to their old work or find other employment, without having to resort to relief." Unemployment benefits

---

[1] Alabama was the first state to pass an unemployment compensation law.

4

provide cash to a newly unemployed worker "at a time when otherwise he would have nothing to spend," serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity.  402 U.S. 121, at 130-132.

**4.    Illinois unemployment compensation is funded, in part, through federal grants [42 U.S.C. Secs. 1101-1105], which are conditioned on compliance with federal law.**

States may, but are not required, to enact unemployment compensation law. *In re Sorrell*, 359 B.R. 167,181 (Bankr. S.D.Ohio, 2007), citing Allard, *Means Testing – Can it Work*?, 061506 ABI-CLE 11 (June 15-18 2006), at Part C (Unemployment Compensation).  If, however, a state does enact an unemployment compensation law, it is required to comply with a series of federal mandates.  See 42 U.S.C. Sec. 1321 (Eligibility requirements for transfer of funds; reimbursement by State; application; certification; limitation). Illinois is required to follow these federal mandates, and does so in the Illinois Unemployment Insurance Act  (820 ILCS 405/100 et seq.).

Section 1706 of the Illinois law is entitled "State—Federal cooperation."  Subparagraph B. of Section 1706 provides as follows:

> B.  In the administration of this Act, the Director shall cooperate, to the fullest extent consistent with the provisions of this Act, with the United States Secretary of Labor, or other appropriate Federal agency, with respect to the provisions of the Federal Social Security Act [42 U.S.C. Sec.301], that relate to unemployment compensation, the Wagner-Peyser Act [29 U.S.C. Sec. 49 et seq.], the Federal Unemployment Tax Act [26 U.S.C. Sec. 3301], and the Federal-State Extended Unemployment Compensation Act of 1970 [26 U.S.C. Sec. 3304]; shall make such reports in such form and containing such information as the Secretary of Labor or other appropriate Federal agency may from time to time require and shall comply with such provisions as the Secretary of Labor or other appropriate federal agency may from time to time find necessary to assure the correctness and verification of such reports; and shall comply with the regulations prescribed by the Secretary of Labor or other appropriate federal agency governing the expenditures of such sums as may be allotted and paid to this State under Title III of the Social Security

5

    Act [42 U.S.C. Sec. 301 et seq.] for the purpose of assisting in the administration of this Act.  (820 ILCS 405/1706 (B))

  Pursuant to Section 2100 of the Illinois Act, . . . "all moneys credited to this State's account in the unemployment trust fund pursuant to Section 903 of the Federal Social Security Act, as amended [42 U.S.C. Sec. 1103] . . . shall be paid or turned over to and held by the Director [of the Illinois Act], as ex-officio custodian of the clearing account, . . . all other moneys in the clearing account shall be immediately deposited by the Director with the Secretary of the Treasury of the United States of America to the credit of the account of this State in the unemployment trust fund, established and maintained pursuant to the Federal Social Security Act, as amended [42 U.S.C. Sec. 301 et seq.]. . . ." (820 ILCS 405/2100 (A))

  Further, at sub-paragraph B. of Section 2100 of the Illinois Act, [M]oneys credited to the account of this State in the unemployment trust fund by the Secretary of the Treasury of the United States pursuant to Section 903 of the Social Security Act [42 U.S.C. Sec. 1103] may be requisitioned from this State's account and used as authorized by Section 903 [42 U.S.C. Sec. 1103]."  (820 ILCS 405/2100 (B))

  Except for delinquent child support, Section 1300(B) of the Illinois Unemployment Act makes receipt of unemployment compensation exempt from creditors' claims and liens.  (820 ILCS 405/1300(B))

**5.**  **If Illinois law fails to comply with the requirements of the Social Security Act, it is invalidated by the Supremacy Clause of the U.S. Constitution. U.S. Const. art. VI, Sec. 1, cl. 2.  *See, Crosby v. Nat'l. Foreign Trade Council*, 530 U.S. 363, 120 S.Ct. 2288 (2000).**

6

The Seventh Circuit Federal Appellate Court reviewed a provision of the Illinois Unemployment Compensation Act in *Jenkins v. Bowling*, 691 F.2d 1225 (7th Cir. 1982). The statutory provision in question was sub-paragraph B. of Section 602 entitled "Discharge for misconduct – Felony." (820 ILCS 405/602 (B))  Consistent with the U.S. Supreme Court's decision in *Crosby v. Nat'l Foreign Trade Council, supra,* the Seventh Circuit held that the postponement of unemployment benefits under subsection B was contrary to the Federal Social Security Act (42 U.S.C. Sec. 301 et seq.) and therefore was invalid under the supremacy clause.

**6. Statutory Construction Of Relevant Portions of BAPCPA Support The Conclusion That Unemployment Compensation Is Intended To Be Excluded From CMI Because It Is A Benefit Received Pursuant To The Social Security Act.**

The first bankruptcy case to address the question of whether unemployment benefits are benefits derived under the Social Security Act and therefore excluded from Current Monthly Income was *In Re Sorrell,* 359 B.R. 167, (Bankr. S.D. Ohio 2007).  One of the issues presented was whether the debtor's Chapter 7 case presented abuse under §707(b)(2)(A)(I) based upon the debtor not including unemployment income in the CMI calculation.

The court pointed out that initial court decisions struggled with the lack of clarity and coherence in significant portions of the 2005 Act which required an analysis applying the canons of statutory construction, however, statutory construction is a tool only to be used if the plain meaning of the statute is ambiguous or cannot be determined. *In Re Sorrell* recalled that "the courts must presume that a legislature says in a statute what it means and means in a statute what it says there" quoting *Connecticut Nat'l Bank of Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The *Sorrell* Court examined other areas of the 2005 Act which contained specific references to the Social Security Act including §362(b)(2), which references §§466(a)(16) [42 USCS § 666(a)(16)] , 466(a)(7) [42 USCS § 666(a)(7)], §464 and 466(a)(3) [42 USCS §§ 664 and

7

666(a)(3)] of the Social Security Act. In addition, the Court went on to note that references to specific provision of the Social Security Act can also be found in 11 U.S.C. §704(c)(1)(A)(I) and 11 U.S.C §1302(d)(1)(A)(i), namely sections 464 and 466 of the Act. The Court observed:

> In all of these examples, Congress did not choose the broad term the "Social Security Act," which is the language chosen in connection with CMI; but, rather, selected specific provisions of the Social Security Act. The CMI definition does not contain any congressionally limited specific provisions of the Social Security Act. It is appropriate to conclude that when Congress wished to limit the applicability of the Social Security Act, it did so by reference to specific sections. Canons of statutory construction approved by the Supreme Court recognize that congressional enactments which contain particular language in one section of a statute, but omit such particularity in another section, reflect Congress's intention and purpose in such disparate use. *BFP v. Resolution Trust Corp*, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L. Ed. 2d 556 (1994), citing *City of Chicago v. EDF*, 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L. Ed. 2d 302 (1994). *See also Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993).

A comparison of the specificity which Congress chose in referring to limited, specific provisions of the Social Security Act in §§ 362(b)(2)(D), (E), (F) and (G), 704(c)(1)(A)(i) and 1302(d)(1)(A)(i) as opposed to Congress's choice in referring to the unlimited, general provisions of the entire Social Security Act in § 101(10A)(B) provides further support for the conclusion that unemployment compensation is one of the "benefits received under the Social Security Act." *In re Sorrell*, 359 B.R. 167, 183 (Bankr. S.D. Ohio 2007)

Subsequently, *In Re Munger*, 370 B.R. 21 (Bankr. D. Mass. 2007), faced the same issue and relied upon the *Sorrell* decision as well as various writers' commentary. Holding that unemployment benefits were benefits derived under the Social Security Act, the *Munger* Court noted that the issue of unemployment compensation has been debated among bankruptcy commentators since the drafting of the Means Test Form in 2005. Although some commentators have disagreed with the exclusion of unemployment income from the calculation of current monthly income and at least one court has relied

upon these interpretations, the *Munger* court found the commentators supporting the decision in *In Re Sorrell* to be more persuasive:

> On the other hand, several bankruptcy commentators support the statutory interpretation set forth in *Sorrell*. Collier on Bankruptcy, in its analysis of § 101(10A), states, "[u]nemployment benefits are provided for in Titles III, XII, XIII and XV [of the Social Security Act] . . . While many of these programs primarily benefit lower income families not affected by the means test, a debtor may receive benefits from such a program that would otherwise be counted in current monthly income . . ." suggesting that unemployment compensation should be excluded from the calculation of CMI under the Means Test. Collier on Bankruptcy 101-81 (Alan N. Resnick & Henry J. Sommer eds., 2007).

The court went on to state that statutory construction of the Bankruptcy Code supported the contention that the phrase is intentionally broad.

> Sections of the Bankruptcy Code distinguish "unemployment compensation" from "a social security benefit." See, e.g., 11 U.S.C. § 522(d)(10)(A) ("The following property may be exempted under subsection (b)(2) of this section: (10) the debtor's right to receive -- (A) a social security benefit, unemployment compensation, or a local public assistance benefit . . ."). The way in which Congress chose to phrase the references in the sections supports the view that "a benefit received under the Social Security Act" in § 101(10A)(B) was purposefully intended to be broader than "a social security benefit." "Unemployment compensation" is included in this broader definition.
>
> *In re Munger*, 370 B.R. 21, 26 (Bankr. D. Mass. 2007).

Prior to enactment of BAPCPA, social security benefits were included in the disposable income calculation (*In re Salter*, 2007 WL 1076686 (Bankr. M.D. Ala. April 4, 2007). However, with the implementation of BAPCPA, the exclusions from current monthly income were narrowly drawn.

Significantly, rather than rely on the debtor's actual income, Congress explicitly excluded certain types of income from the definition. In addition to specifically excluding benefits received pursuant to the Social Security Act, in calculating "disposable income" for purposes of chapter 13, Congress has also excluded certain child support, foster care, and disability payments, contributions to pension and deferred compensation plans, and

9

funds used to repay pension loans.² See 11 U.S.C. §§ 1322(f), 1325(b). Such choices regarding what income should be considered in determining the debtor's ability to pay are consistent with other amendments that protect retirement benefits and child support payments at the expense of creditors. See, e.g., 11 U.S.C. §§ 522(b)(3)(c), 522(d)(12), 541(b)(7), 1325(a)(8).

That Congress has decided to apply a consistent formula to all debtors and protect certain types of income from the reach of creditors makes the disposable income test different than it was prior to the 2005 amendments, but not unfair. The new test merely represents Congress's best efforts to balance the competing interests of debtors and creditors in today's credit-oriented society.

**D**.    **CONCLUSION.**

For the reasons cited, the Debtor moves the Court to follow the holdings in the cases of *Sorrell* and *Munger* and rule that unemployment compensation is a benefit under the Social Security Act and as such, is properly excluded from the calculation of current monthly income.

> Respectfully Submitted,
>
> Jonathan J. Kucharz, Debtor
>
>
> By__/s/ W. Edgar Weer_____
>     W. Edgar Weer, his attorney

---

² Congress's determination that funds used for repayments of pension loans should not be considered disposable income reversed the holdings of many courts. *See, e.g., Anes v. Dehart*, 195 F.3d 177 (3d Cir. 1999); *Harshbarger v. Pees*, 66 F.3d 775 (6th Cir. 1995).

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certify that I served a copy of the Debtor's Brief upon the parties listed below by electronic notice through the court and by mailing same to the person(s) listed below in a properly addressed envelope postage prepaid and by placing in a U.S. Mail Box in Pekin, Illinois before the hour of 5:00 p.m. on August 24, 2009.

Michael D. Clark
mclark13@mtco.com

U.S. Trustee
USTPRegion10.PE.ECF@usdoj.gov

Robert Ropp
rropp@mtco.com

Wilmer Edgar Weer
smithandweer@yahoo.com
wilmer.wr@gmail.com

Jonathan Kucharz
817 N.E. Madison Avenue, Apt. B
Peoria, IL. 61603


                                                      /s/ W. Edgar Weer
                                                      W. Edgar Weer, his attorney


W. Edgar Weer
Smith & Weer, P.C.
410 Elizabeth St.
Pekin, IL. 61554
Phone: (309) 347-4300
Fax: (309) 347-3574
Email: wilmer.wr@gmail.com
smithandweer@yahoo.com